UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA,     :

 -against-         :  12 Cr. 887 (ALC)

DARYL PAYTON, et al.,      :

     Defendant.    :

------------------------------------------------------------x


# MEMORANDUM IN SUPPORT OF DARYL PAYTON'S MOTION TO VACATE HIS GUILTY PLEA


Stampur & Roth
299 Broadway, Suite 800
New York, NY 10007
(212) 6194240
Jamesrothesq@gmail.com

Epstein & Weil, LLC
225 Broadway, Suite 1203
New York, New York  10007-3776
(212) 732-4888
lepstein@epsteinweil.com

*Attorneys for Defendant Daryl Payton*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

UNITED STATES OF AMERICA,          :

    -against-                 :      12 Cr. 887 (ALC)

DARYL PAYTON, et al.,           :

              Defendant.      :

---------------------------------------------------------------x

## POINT I

## THE COURT SHOULD VACATE MR. PAYTON'S GUILTY PLEA BECAUSE HIS FACTUAL ALLOCUTION WAS INSUFFICIENT. MR. PAYTON, A REMOTE "TIPPEE," NEVER ADMITTED KNOWING THAT THE "TIPPER" RECEIVED A PERSONAL BENEFIT.

*A. The Plea Allocution Fails to Show That Mr. Payton Knew That the Tipper Received a Personal Benefit*

Daryl Payton received a stock tip from Thomas Conradt, who received it from Trent Martin, who received it from an attorney (*Government Memorandum In Support of Sufficiency of Defendants' Pleas*, p .2).  Mr. Payton admitted at his plea allocution on November 6, 2014 that he received a tip from a fellow broker who received it from his roommate (*Payton Plea Allocution*, pp. 28-29).[1]

The Second Circuit decided *United States v. Newman*, 2014 U.S. App. LEXIS

---

[1] A copy of Mr. Payton's plea allocution is annexed as Exhibit A.

23190 (2d Cir. 2014) on December 10, 2014, and clarified certain ambiguities in this Circuit's the law of insider trading.  Under *Newman*, a remote tippee like Mr. Payton is liable for insider trading under Section 10 and Rule 10b-5 only when he knows that the misappropriator of the tip or "tipper" received a personal benefit in exchange for its disclosure. This benefit must be "objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature."  *Id.* at *30; *Dirks v. S.E.C.*, 463 U.S. 646 (1983).  The Government's Memorandum does not allege that Mr. Payton knew of any benefit that the attorney or Martin received, and Mr. Payton never admitted having any such knowledge.

> B.   *Newman Requires That a Tippee Know That the Tipper Received a Personal Benefit in Order to Be Liable for Insider Trading.   Rule 11 Requires That Mr. Payton's Plea Be Vacated Given the Absence of Any Admission Supporting this Element.*

On December 18, 2014, prior to any sentencing proceeding, the Court *sua sponte* raised the issue as to whether *Newman* requires the vacatur of Mr. Payton's plea, and Mr. Payton orally moved to withdraw his guilty plea.  *Neither* Mr. Payton's allocution nor the government's recitation of the evidence demonstrates that he knew whether the misappropriator or tipper received a personal benefit in exchange for disclosure.

A motion to withdraw a guilty plea must be granted where the defendant's factual allocution was insufficient to support each and every element of the crime.  F.R.Cr.P. 11(b)(3).  This is so even when insufficiency is based on a change in the law between the

time of the plea and that of the motion.  *United States v. Hadima*, 160 Fed. Appx. 224 (3d Cir. 2005); *United States v. Ortega-Ascanio*, 376 F.3d 879, 883-884 (9th Cir. 2004).

*Newman* compels the Court to vacate Mr. Payton's plea.  The plea allocution was insufficient to show that Mr. Payton knew of any personal benefit which the misappropriator or tipper may have received in exchange for the disclosure.

C.   *Newman Expressly Rejects the Government's Argument That the Tippee's Knowledge of the Tipper's Personal Benefit Is Not an Element in a "Misappropriation Case"*

The Government argues that *Newman* is inapplicable because *Newman* is a "classic insider case," while this is a "misappropriation case."[2]  The Government argues that the Second Circuit has long dispensed with the requirement that a tippee must know of the tipper's personal benefit in misappropriation case, and that nothing in *Newman* should be read to disturb this (*Government's Memorandum*, pp. 8-10).  This is nonsense and eerily reminiscent of the Government's discredited position in *Newman* that a tippee's knowledge of the tipper's benefit is not an element even in "classic" insider trading cases.  *United States v. Newman*, *supra* at *16.

*Newman* states categorically that the tippee's knowledge of the tipper's personal benefit is a required element for tippee liability in both "classic" and "misappropriation" cases.  "The elements of tipping liability are the same, regardless of whether the tipper's

---

[2]The basic distinction between a "classic" and a "misappropriation" case is laid out at length in the *Government's Memorandum* and co-defendant *Durant's Memorandum in Support [his] Second Motion to Dismiss the Indictment* and will not be repeated here.

duty arises under the 'classical' or the 'misappropriation' theory." *United States v. Newman*, *supra*, 2014 U.S. App. LEXIS 23190, *18.  The Government attempts to deflect this pronouncement by characterizing it as *dicta,* and insisting that it lacks any precedent in Second Circuit law.  This is another instance of the Government arguing what it "would like the law to be," rather than what it is.  *Id.* at *20.  Although *Newman's* pronouncements may well be dicta in the sense that Newman itself is a "classical case," the case cited by *Newman* for the proposition that tippee liability under both the "classical" and "misappropriation" requires  that the tippee know of the tipper's personal benefit is *SEC v. Obus*, 693 F.3d 276 (2d Cir. 2012) – a misappropriation case.  *Id.* at *18.[3]

> D.    *No Doctrinal Difference Justifies Treating "Classic" and "Misappropriation" Cases Differently Regarding the Element of a Tippee's Knowledge*

There is no doctrinal reason to distinguish between the type of knowledge required of a tippee in a "classical" insider trading case and that in a "misappropriation" case.  As this Court recently observed, the "misappropriation theory is just a way to substitute a

---

[3]The extent to which the Government improperly asks this Court to reject the Second Circuit's reading of its own precedent is typified by the Government's treatment of *United States v. Falcone*, 257 F.3d 226 (2d Cir. 2001).  The Government reads *Falcone* as holding that a tippee need not know that the tipper received a personal benefit in order to be liable for insider trading in a misappropriation case.  *Government Memorandum*, p. 10.  *Newman* explicitly rejects this reading of *Falcone* as exemplifying the Government's "overreliance on prior dicta."  *Newman* observed that the tippee's knowledge in *Falcone* was not at issue because there was evidence that the intermediary tipper told the remote tippee 'the details of the scheme," and that any language in *Falcone* suggesting, as the Government would have it, that a tippee need not be aware that tipper received a personal benefit, was being read out of context.  *United States v. Newman*, *supra* at *18.

corporate outsider for a corporate insider in terms of that person having the inside information and breaching this fiduciary duty" (Transcript of December 18, 2014 conference for co-defendant Durant, at 33). The Second Circuit's refusal to distinguish between the type of knowledge required of a tippee in a "classical" and that in a "misappropriation" insider trading case  accords with the Eleventh Circuit's opinion in *SEC v. Yun*, 327 F.3d 1263 (11th Cir. 2003), the only appellate opinion to analyze this issue in depth.  In this regard, the Eleventh Circuit concluded, "[T]here is no reason to distinguish between a tippee who receives confidential information from an insider (under the classical theory) and a tippee who receives such information from an outsider (under the misappropriation theory)." *Id.* at 1275.[4]

The Government nonetheless contends that the misappropriation theory is doctrinally different from the "classical" theory in that a breach "in a classical case" is centered on "the use of inside information for self-dealing" while misappropriation occurs "*whenever* information is misappropriated" *(Government Memorandum,* p. 9)(emphasis in the original).  This argument does not withstand scrutiny.  The essence of insider trading is self-dealing for personal benefit.  Where the tipper does not receive such a benefit, the tippee, whose liability derives from that of the tipper, is, like the tipper himself, free from any liability.  *Dirks v. S.E.C.*, *supra*; *United States v. Whitman*, 904

---

[4]*Yun* is treated a length in co-defendant Durant's motion to dismiss, filed January 5, 2015. Mr. Payton adopts these arguments.  In the event that the Court vacates Mr. Payton's plea, he joins in Mr. Durant's motion to dismiss.

F.Supp.2d 363, 371 (S.D.N.Y. 2012).

As justification for its distinction between the level of tippee knowledge required in the two types of insider cases, the Government seems to argue that while a corporate insider or tipper in a "classical" case might disclose insider information without receiving a personal benefit, i.e., to expose a fraud, as in *Dirks*, no such scenario can exist in a "misappropriation" case *(Government Memorandum*, p. 9).   This is not so.  An attorney misappropriator, like the insider in *Dirks*, might disclose confidential information about a deal without any interest in trading, but for the purpose of exposing a fraud or preventing some other harm.  While the attorney's conduct may violate the bar's code of ethics or a state fiduciary law, neither the attorney or any of his tippees, who like those in *Dirks* traded on the inside information, would violate the securities law since the attorney received no personal benefit.  *United States v. Newman, supra* at *17.  See also, *United States v. O'Hagan*, 521 U.S. 642, 655 (1997).  Any other conclusion would result in a tippee receiving a tip from an outsider facing a broader exposure than a tippee who receives the tip from an insider.  This would be a peculiar result that was never contemplated by the securities laws and expressly rejected in *Newman*.

7

## POINT II

## ANY ISSUES CONCERNING THE SCOPE OF NEWMAN SHOULD BE DECIDED AT A TRIAL RATHER THAN ON A MOTION TO VACATE THE PLEA.

Under Federal Rule of Criminal Procedure 11(d)(2)(B), "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence[,] if . . . the defendant can show a fair and just reason for requesting the withdrawal."  In determining a motion to vacate, the court should consider, among other things:  (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea. *United States v. Schmidt*, 373 F.3d 100, 102-103 (2d Cir. 2004).

Mr. Payton satisfies all of these criteria.  He has asserted his legal innocence, i.e., the lack of any knowledge as to whether the tipper received a benefit.  He made the motion was to withdraw the guilty plea a little more than a month after entering it.  The reasons for his doing so, a clarification in the substantive law, has been recognized as a compelling basis for vacating a plea. *United States v. Hadima*, *supra*; *United States v. Ortega-Ascanio*, *supra*. The Government does not assert that  it will suffer prejudice if the motion is granted.  Mr. Payton will be tried jointly with co-defendant  Mr. Durant, and the evidence that the Government will present against Mr. Payton is basically the

same as it would present against Mr. Durant if Mr. Durant proceeded to trial by himself.

Moreover, to the extent that there is any question concerning the scope of *Newman*, the issues should be resolved at a full trial rather than on a motion to withdraw a plea. This will enable the Court to assess the evolving law of insider trading against a full set of facts, in the best common law tradition, rather than in the abstract.

## CONCLUSION

The Court should vacate Mr. Payton's plea.

Respectfully submitted,

/s/
Lloyd Epstein, Esq. (8051)
Epstein & Weil, LLC

James M. Roth, Esq. (0811)
Stampur & Roth

Dated: New York, NY
 January 16, 2015

cc.  All Counsel
 (Via ECF)

 Hon. Andrew L. Carter
 (Courtesy copy by Regular Mail)

 Mr. Daryl Payton